# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

VANESSA WEATHERS,

    Plaintiff,

    v.

ILLINOIS STATE POLICE,

    Defendant.

No. 04 C 6103
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

On May 27, 2003, Defendant, the Illinois State Police ("ISP"), notified Plaintiff Vanessa Weathers ("Weathers"), an ISP employee, that she would receive a one-day suspension from her job. The ISP had concluded, pursuant to an investigation by its Department of Internal Investigation ("DII"), that Weathers failed to comply with a court order and committed conduct unbecoming of an ISP employee in violation of the ISP's policies. Weathers filed a grievance of her suspension. After further investigation created doubt as to the validity of the court order Weathers was accused of violating, and pursuant to negotiations between Weathers's union representatives and management, the ISP decided to return the pay Weathers lost during her one-day suspension and to expunge her records of the suspension.

Weathers subsequently filed this complaint against the ISP alleging discrimination based upon her sex, race, age, and marital status. She also alleges retaliation in violation of 42 U.S.C. § 2000e et seq. ("Title VII"). I previously dismissed Weathers's sex, race, and age discrimination claims but denied the ISP's motion to dismiss Weathers's Title VII retaliation claim and her state

law marital status discrimination claim. The ISP now moves for summary judgment of the remaining claims.

*Standard for Summary Judgment*

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the plaintiff must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). If the defendant presents a *prima facie* case showing that it is entitled to judgment as a matter of law, the plaintiff may not rest upon the allegations or denials in the pleading but must set forth specific facts showing that a genuine issue for trial exists. *See Anderson*, 477 U.S. at 256-57.

*Retaliation Claim*

Weathers claims that she was suspended in retaliation for a racial discrimination charge she filed on March 31, 2000 with the Equal Employment Opportunity Commission ("EEOC"). Title VII forbids an employer from retaliating against an employee for opposing any practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a); *see also Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003). Weathers must establish a *prima facie* case of retaliation or her

claims will be subject to summary judgment. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). In the absence of direct evidence, as is the case here, Weathers must establish a *prima facie* case of retaliation using the indirect method. *Id*. To do this, Weathers must show that she engaged in statutorily protected activity, performed her job according to the ISP's legitimate expectations but suffered an adverse employment action, and was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. *Id*. S*ee also Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

*Adverse Employment Action*

A reasonable trier of fact could not find that Weathers suffered an adverse employment action. Not everything that makes an employee unhappy is an actionable adverse action. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Actions such as hiring, firing, failing to promote, reassigning with significantly different responsibilities, and a decision causing a significant change in benefits are tangible, adverse employment actions. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 753 (1998). In other words, only tangible employment actions that cause a significant change in employment status constitute actionable adverse actions. *Id*. The action must cause a materially adverse change in the terms and conditions of employment that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993).

Weathers relies on an opinion from the Court of Appeals of the Seventh Circuit to support her proposition that a one-day suspension, later reversed, constitutes an adverse employment action. *See Molnar v. Booth*, 229 F.3d 593, 601 (7th Cir. 2000) (holding that a subsequently reversed negative performance evaluation constituted a tangible employment

3

action). *See also Ezell v. Potter*, 400 F.3d 1041, 1049 (7th Cir. 2005) (removal letter constituted adverse employment action for period before it was withdrawn; otherwise, harassing employers could demote employees with impunity if they later reversed the demotions). The negative performance evaluation in *Molnar*, prior to its reversal, could have "spelled the end of a career." 229 F.3d at 601. In contrast, Weathers does not contend, and there is no evidence to indicate, that the one-day suspension in her record would have marked the end of her career had it not been reversed. In fact, Weathers's continued employment and subsequent promotion after having received a more serious, five-day suspension in 2000 (which was not expunged from her record) indicates that such suspensions do not generally spell the end of a career. In sum, Weathers's one-day suspension does not rise to the level of either the negative evaluation or demotion (both later rescinded) in *Molnar* and *Ezell*, and she presents no facts suggesting that her suspension posed any risk of the severe consequences posed by the disciplinary action in those cases. No reasonable jury could conclude that Weathers suffered an adverse employment action.

*Similarly Situated Employees*

Weathers also fails to show that similarly situated employees outside her protected class received better treatment. For cases in which the plaintiff claims to have been disciplined more harshly than another employee based on a prohibited reason, the plaintiff must show that he or she was "similarly situated with respect to performance, qualifications, and conduct." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (internal quotations and citations omitted). This does not mean that the plaintiff must produce evidence of an employee outside the protected class that committed the same infraction. Rather, the plaintiff need only show that

4

the other employees engaged in similar, or even worse, conduct. *See Ezell*, 400 F.3d at 1050 (concluding that the plaintiff met his burden by producing evidence of another employee who committed an offense "at least as serious" as that committed by plaintiff but who, unlike the plaintiff, was not subject to any discipline).

Although none of the employees Weathers cites was arrested for refusing to comply with a court order, some of them engaged in arguably similar conduct and were thus likely similarly situated. Like Weathers, two of the employees Weathers cites were involved in confrontations with law enforcement officers. However, neither received better treatment than Weathers. In fact, they appear to have fared more poorly: both received oral and written reprimands that are still found in their ISP files. Weathers cannot rely on these facts to establish her *prima facie* case. Weathers also points to a third employee who allegedly violated the law but received more favorable treatment. However, Weathers offers no facts to support her allegation. She states only that she is "aware" of an officer in another department who fared better than she. Unfortunately for Weathers, unsubstantiated and conclusory assertions do not create issues of fact. *See Sample v. Aldi, Inc.*, 61 F.3c 544, 549 (7th Cir. 1995).

Weathers has not presented any evidence of an adverse employment action nor any evidence of a similarly situated employee that was treated more favorably than she was. As Weathers cannot establish her *prima facie* case, I will not consider her arguments about the pretext underlying the ISP's explanation for its actions. *See Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 445 (7th Cir. 1997). The ISP's motion for summary judgment of Weathers's retaliation claim is granted.

*Marital Status Discrimination Claim*

Weathers also claims that she suffered from marital status discrimination. Title VII, like most federal civil rights laws, is "silent on the issue of marital-status discrimination." *Cleaves v. City of Chicago*, 68 F. Supp. 2d 963, 967 (N.D. Ill. 1999) (internal quotation and citation omitted). Under Seventh Circuit precedent, sex-based discrimination related to marriage violates Title VII. *See Sprogis v. United Air Lines Inc.*, 444 F.2d 1194, 1198 (7th Cir. 1971) (a no-marriage rule directed against only female flight attendants is sex discrimination). However, marital status discrimination itself is not recognized under Title VII. "Title VII prohibits treating married men and married women differently, but it does not protect marital status alone." *Cleaves*, 68 F. Supp. 2d at 967 (citing *Coleman v. B-G Maintenance Mgmt.*, 108 F.3d 1199, 1204 (10th Cir. 1997)).

Weathers makes a marital status discrimination claim, not a sex discrimination claim related to marriage. Furthermore, she seems to be making the claim under the authority of Title VII, given that she claims marital status discrimination in her 2003 EEOC Charge and her failure to identify any state law under which she derives authority for her claim. Nevertheless, because Weathers is a *pro se* plaintiff, her complaint is to be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *and McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Thus, I will construe her marital status discrimination claim as originating under the applicable state law.

The Illinois Human Rights Act ("IHRA") Art. 5, § 2-102(A) makes it a civil rights violation for any employer to discharge an employee "on the basis of unlawful discrimination." According to IHRA Art. 5, § 1-103(Q), "unlawful discrimination" includes discrimination based

upon a person's marital status. "Marital status" is defined as "the legal status of being married, single, separated, divorced, or widowed." IHRA Art. 5, § 1-103(J). However, the Seventh Circuit has held that all civil rights actions originating under the IHRA fall within the exclusive jurisdiction of the Illinois Human Rights Commission. *Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001) (citing *Village of Maywood Bd. of Fire & Police Comm'rs v. Dep't of Human Rights*, 695 N.E.2d 873, 880 (Ill. App. Ct. 1998)). In asserting discrimination based upon marital status, Weathers fails to assert a claim that is cognizable before this court. As a result, summary judgment against Weathers's marital discrimination claim is appropriate as well.

***Motion to Amend the Original Complaint to Add New Defendants***

Weathers has also filed a motion to amend her original complaint in order to add ISP Director Larry G. Trent, Major Joseph F. Gryz, and DII Special Agents Robert Pinzon and Jeff Padilla as defendants in the suit. In regards to Gryz, the motion is denied because "government officials performing discretionary functions generally are shielded from liability for civil damages" under the doctrine of qualified immunity so long as "their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Gryz is protected by qualified immunity since nothing in the complaint or record indicates that he carried out his duties incompetently or in knowing violation of the law. In fact, Gryz was the author of the ISP memo recommending, in detail, why Weathers should not receive any disciplinary action in

7

response to her arrest. There is simply no evidence that Gryz's actions caused Weathers any harm; thus, I deny Weathers's motion to amend her original complaint to add Gryz.

I am denying Weathers's motion to add Trent, Pinzon, and Padilla as defendants because adding them would fail "to cure the deficiencies in the original pleading, [and] [w]ould not survive a second motion to dismiss." *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991). In such situations, I have discretion to deny leave to amend. *Id*. I exercise that discretion here because to order otherwise "would impose upon the defendants and the court[ ] the arduous task of responding to an obviously futile gesture on the part of the plaintiffs." *Id*.

It is true that Trent, Pinzon, and Padilla would not be entitled to qualified immunity if they knowingly violated the law. However, their addition to the suit would not rehabilitate Weathers's claims. They are not amenable to suit in their official capacities as that would be duplicative of the claims against the ISP. *See, e.g., Alicea v. City of Chicago*, No. 02 C 0027, 2002 WL 1021553, at *3 (N.D. Ill. May 20, 2002). They are not amenable to suit in their individual capacities under the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 623 et seq., because individuals do not meet the definition of employer under the ADEA. *See United States EEOC v. AIC Sec. Investigations Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir. 1995). There is also no individual liability under Title VII. *See Williams v. Banning*, 72 F.3d 552, 553-554 (7th Cir. 1995). Neither can Weathers hold them liable under 42 U.S.C.§ 1983 based upon an alleged Title VII violation because a plaintiff cannot bring such an action against a person who could not be sued directly under Title VII. *Huebschen v. Department of Health & Social Servs.*, 716 F.2d 1167, 1170 (7th Cir. 1983). Finally, as discussed above, even if Weathers were to survive a motion to dismiss, she cannot establish a *prima facie* case of retaliation under Title VII;

8

therefore, her claims against these intended defendants would be subject to summary judgment in their favor.

***Conclusion***

For these reasons, the ISP's motion for summary judgment is granted, and Weathers's motion to amend her original complaint to add Trent, Gryz, Pinzon, and Padilla as defendants is denied.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: June 6, 2006